**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Victor Sepulveda and Jessica Castaneda, individually and on behalf of all others similarly situated, | : | Case No. ____ |
| Plaintiffs, | : | |
| v. | : | **CLASS ACTION COMPLAINT** |
| ByHeart, Inc., | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |
| | x | |

Plaintiffs Victor Sepulveda and Jessica Castaneda (hereinafter, "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, allege the following:

## NATURE OF THE ACTION

1. This consumer class action seeks to remedy the deceptive, misleading, and dangerous business practices of ByHeart, Inc. ("ByHeart" or "Defendant") with respect to its manufacturing, marketing, and sale of infant formula products throughout the Commonwealth of Pennsylvania and the United States.

2. Following Defendant's recall of certain of its products and instructions to consumers not to use those products and to discard them—thus rendering them worthless—this action is brought on behalf of purchasers of Defendant's recalled formula products, including, but not limited to, ByHeart Whole Nutrition Infant Formula cans and ByHeart single-serve Anywhere Pack™ sticks ("Products"). Defendant's Products are subject to a nationwide recall in response to

investigations by the Centers for Disease Control and Prevention ("CDC") and the U.S. Food and Drug Administration ("FDA") into a link between cases of infant botulism and consumption of Defendant's Products. Plaintiffs and the Class defined below have incurred direct economic damages as a result of the recall that Defendant has refused to reimburse, in the form of the purchase price of the recalled Products and other consequential damages.

3. Defendant improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, including Plaintiffs and the Class, by omitting and not disclosing on its packaging that the Products were defective and could not be used because of the risk that they were contaminated with *Clostridium botulinum* ("*C. botulinum*"), the bacteria responsible for causing infant botulism.

4. Infant botulism is a serious and potentially fatal illness that occurs when *C. botulinum* spores are ingested and colonize the intestinal tract, producing botulinum neurotoxins in the immature gut of infants. Affected infants can present with some or all of the following signs and symptoms: constipation, poor feeding, ptosis (drooping eyelid), sluggish pupils, low muscle tone, difficulty sucking and swallowing, weak or altered crying, generalized weakness, respiratory difficulty, and respiratory arrest.

5. Defendant omitted from its packaging that the Products at issue may contain *C. botulinum*. Knowing about the presence of *C. botulinum*, or the risk of same, is material to reasonable consumers. Knowledge of the presence and/or risk of *C. botulinum* was solely within the possession of Defendant, and consumers could obtain such information only by sending the products to a laboratory for extensive testing. Defendant's omission would and did lead reasonable consumers to believe that they were purchasing products that were safe for their infants to

consume, and that did not have to be thrown away (as later instructed by Defendant) because of the risk of botulism.

6. Defendant marketed its Products as organic and containing certified-clean ingredients, and as designed for consumption by infants with sensitive stomachs. Defendant priced and marketed its Products at a premium based on these representations. Defendant's representations about the Products did not contain any warning of the risk of botulism.

7. A representative example of Defendant's lack of disclosure on the Products is depicted below:




8. Plaintiffs and the Class reasonably relied on the affirmations of facts as set forth above on Defendant's labeling and marketing materials as well as the omission of any risk of botulism.

9. Consumers like Plaintiffs expect that the infant baby formula products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and may even be life threatening to their infants who are consuming the Products. Unfortunately here, those reasonable expectations for Defendants' Products did not match reality. Instead, the Products that Plaintiffs and Class members purchased contained, or were at risk of containing, *C. botulinum*.

10. Defendant's own recall and other testing confirmed the presence of *C. botulinum* in the Products. Defendants issued a recall and edict to its customers (the Class) that the Products were unusable, thus causing Plaintiffs and the Class direct economic damages as a result of Defendant's conduct.

11. Defendant issued a limited recall of its Products on November 8, 2025. Defendant expanded that recall on November 11, 2025, to include all lot numbers and all sizes of cans and packets of its Products.

12. On November 14, 2025, Defendant began to offer only a limited refund to purchasers of its Products. To be eligible, consumers must have purchased the Products directly from ByHeart.com. Defendant states that eligible consumers who purchased the Products from its website on or after October 1, 2025, may receive a refund but only up to two units of Product cans or single-use packets. Eligible first-time consumers may receive a full refund of their first order.

13. Defendant does not offer refunds for consumers who purchased the Products from one of Defendant's retail partners, including Amazon. Defendant instead instructs consumers to contact the retailers from whom they purchased the Products.

14. To be eligible for a refund, a consumer must also retain the Products. Defendant's recall was deliberately designed to preclude the vast majority of consumers from receiving a refund.

15. Defendant's website contains misleading and contradictory instructions to consumers, which are designed to ensure consumers lose their eligibility to receive a refund. For example, Defendants instruct at the top of every page that consumers "should immediately discontinue use and dispose of the product." However, in drop-downs under a Frequently Asked Questions section, Defendant instructs consumers to "keep the container in a safe spot," and that "[i]f your child does not develop symptoms after 30 days, throw your containers out."

16. Defendant is aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away and not feeding them to their infants for whom they were purchased. Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Defendant is further aware that most consumers purchase its Products from its retail partners. And Defendant is aware that the many consumers who do not maintain receipts therefore cannot obtain a refund at the purchase location for the recalled Products, to the extent that such refunds may be offered.

17. Accordingly, Defendant's recall is designed to reach very few people and to benefit very few of the consumers who purchased the Products.

18. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labels themselves. With respect to the recalled Products, the packaging and labels, like the rest of Defendant's marketing and advertising campaign, omit any warning that the Products may be contaminated by *C. botulinum* and that the Products are unsafe and unfit for use by infants.

19. As such, a reasonable consumer reviewing Defendant's labels reasonably believed that they were purchasing Products that were safe for oral ingestion and did not contain or potentially contain harmful ingredients. Consumers expect packaging and labels to accurately disclose the presence within the Products of unsafe risks such as bacteria that cause serious foodborne illnesses like infant botulism.

20. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products at issue were not safe for human use, and were therefore worthless. This is evidenced by Defendant's own recall and instructions to Plaintiffs and Class to throw away the products and not to use them or have infants ingest them.

21. Defendant did not include a risk of *C. botulinum* anywhere on the Products' packaging or labeling.

22. Defendant's misrepresentations and omissions concerning the safety of the Products and what is in the Products was material to Plaintiffs and the Class. Consequently, Plaintiffs and Class members lost the entire benefit of their bargain when what they received was a food product that had to be thrown away because it was unsafe and unfit for consumption by infants.

23. As set forth below, food products containing or at risk of containing *C. botulinum*, such as Defendant's Products, are in no way safe for human consumption and are entirely worthless.

24. Plaintiffs and Class members also paid a substantial price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' label. This is because Defendant was able to charge significantly more for the Products than it would have had it not omitted the fact that the Products

contain or possibly contain *C. botulinum*. Given that Plaintiffs and the Class paid a premium for the Products, Plaintiffs and the Class suffered an injury in the amount of the premium paid, as well as any other direct economic damages that they sustained as a result of the recall, such as the discarding of items of value such as bottles, that may have come into contact with Defendants' recalled Products.

## PARTIES

25. Plaintiffs are citizens and residents of Harrisburg, Pennsylvania. During the applicable statute of limitations period, Plaintiffs purchased and used Defendant's Products that were subject to Defendant's recall because they were unsafe and had a risk of containing C. botulinum and were therefore worthless. Plaintiffs purchased the Products through Target, a third-party retailer, to provide to their infant child, P.S.

26. Prior to purchasing the Product, Plaintiffs saw the packaging of the Products.

27. Prior to purchasing the Product, Plaintiffs conducted research and compared the Products to other infant formula products available. Plaintiffs chose to purchase Defendant's Products, despite the availability of other, cheaper products, based in material part on Defendant's representations about the safety and nutritional benefits of the Products.

28. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiffs would not have been willing to purchase the Products and pay what they did for the Products. The Products that Plaintiffs received were worthless because they were possibly contaminated by *C. botulinum* and were subject to Defendant's recall.

29. Plaintiffs also paid a price premium for the Products they purchased based on Defendant's false, misleading, and deceptive misrepresentations and omissions.

30. Plaintiffs were injured in fact and suffered direct economic damages by purchasing the Products that were worthless as a result of Defendant's improper conduct. The Products were not safe and were not fit for human consumption.

31. Plaintiffs received a notification informing them of the recall on Thursday, November 14, 2025, from both Defendant and Target.

32. Plaintiffs sought a refund from Target for the Products that they purchased, as Defendant's website directed them to do. When they did so, they were denied and told by Target employees that they would have to seek a refund directly from Defendant. Plaintiffs' damages are, at a minimum, the full purchase price that they paid for the Products, plus all other available relief.

33. Defendant ByHeart, Inc. is a Delaware corporation with its principal place of business in New York and corporate headquarters located at 131 Varick Street, 11th Floor, New York, NY 10013. Defendant manufactures the Products, or at least a significant portion of the Products, at its own manufacturing facility in Reading, Pennsylvania.

34. Defendant markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of the Products.

## JURISDICTION AND VENUE

35. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of Pennsylvania, and Defendant ByHeart, Inc. is a citizen of the State of Delaware and the State of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

36. This Court has personal jurisdiction over Defendant because Defendant is registered to conduct and transact business in the Commonwealth of Pennsylvania.

37. Venue is proper because Plaintiffs reside in the Middle District of Pennsylvania and purchased Defendants' Products in this District. A substantial part of the events or omissions giving rise to the claims of the Class occurred in this District.

## FACTUAL BACKGROUND

### ByHeart Markets Healthy Infant Formula at a Premium

38. Defendant designs, manufactures, markets, advertises, and sells infant nutrition products.

39. In 2016, ByHeart was formed because, according to its marketing materials, existing formula manufacturers forced mothers and families to "compromise" the health and safety of infants by using substandard formula. Defendant promised a new and better approach to infant formula, including by focusing on the safety and benefits of the ingredients it uses.

40. Defendant markets all of its formulas as containing "certified clean ingredients." Defendant has explained in past marketing materials that this means its Products are tested for hundreds of contaminants:



41. When it was formed, Defendant explicitly marketed itself as owning and controlling its manufacturing facilities, and as having "control over every can" of its formula.

42. After a contamination incident by a different deadly bacteria contained in its Products in 2022, Defendant revised its marketing to explain that it owns all of its "manufacturing supply chain." Rather than change its approach to marketing or take responsibility for the incident, Defendant attempted to distance itself from the facility associated directly with the contaminated products.

43. In short, Defendant aggressively markets its Products as a healthier and superior alternative to competitors' infant formula products. Defendant does so despite having knowledge that its own manufacturing process and supply chain has caused it to distribute unsafe and unhealthy infant formula products.

44. Consumers have become increasingly concerned about the effects of ingredients in products that they and their children ingest. Companies such as Defendant have capitalized on consumers' desire for food products that purport to provide transparency regarding their ingredients. Indeed, consumers are willing to pay, and have paid, a premium for these products.

**The Infant Botulism Outbreak**

45. Infant botulism is a form of botulism that occurs when spores of the bacterium C. botulinum are swallowed by an infant and colonize the infant's intestines. The C. botulinum spores then grow within the infected infant's intestines and produce the botulinum toxin.

46. The botulinum toxin is a neurotoxin that targets and attacks the body's nerves, resulting in a loss of respiratory function and muscle paralysis, each of which can lead to further dangerous complications. Infants who develop infant botulism initially show symptoms of constipation, poor feeding, loss of head control, and difficulty swallowing. If untreated, the infant

botulism will cause the infant to suffer flaccid paralysis and reduced muscle tone, which can lead to difficulty breathing. Infant botulism can take weeks of intensive hospital care to treat, and can be fatal.

47. On November 8, 2025, the CDC reported that between mid-August and November 2025, 13 infants in 10 different states had been hospitalized and were being treated for suspected or confirmed infant botulism. All 13 infants (100%) had been fed ByHeart Whole Nutrition infant formula in the month before they got sick.

48. On November 10, 2025, the CDC reported two more cases of infant botulism occurring in infants who had been fed Defendants' Products in the month before they got sick.

49. The CDC reported that as of November 10, 2025, of the 84 infants nationwide to have received any treatment for suspected infant botulism since August 1, 2025, 36 had exposure to any powdered infant formula product. Of those 36 infants, 15 (over 40%) had consumed Defendants' Products in the month before they got sick. By contrast, the CDC and FDA note that Defendant's Products represent only an estimated 1% of all powdered infant formula sales in the United States. The CDC's investigation to date has not identified any other infant formula brand that poses a risk of exposure to infant botulism.

50. As of November 14, 2025, the CDC's investigation grew to include 23 infants with suspected or confirmed infant botulism in 13 states, each of whom consumed Defendants' Products in the month prior to getting sick.

51. On November 8, 2025, in response to a request by the FDA, Defendant announced a nationwide recall of two lots of its canned infant formula products. On November 11, 2025, after being informed by the CDC and FDA that the outbreak included infants who were fed ByHeart

Products from different lots than the two which had been recalled, Defendant expanded its recall to include all of its products.

52. Defendant's messaging regarding its recall includes intentional efforts to mislead consumers as to the risk posed by its Products. For example, Defendant stated in a press release on November 8, 2025: "The FDA has not identified a direct link between any infant formula and these cases and there is no historical precedent of infant formula causing infant botulism. Botulism is extremely uncommon in dairy products or infant formula, and is naturally occurring in environmental sources like soil, select vegetables, and dust."

53. Also on November 8, 2025, Defendant's Co-Founder and President Mia Funt stated in a press release that "no testing by ByHeart or regulatory agencies has confirmed the presence of Clostridium botulinum spores or toxin in any ByHeart product." That same day, however, the California Department of Public Health reported that preliminary laboratory results showed the presence of C. botulinum in one of Defendant's Products. See https://www.cdph.ca.gov/Programs/OPA/Pages/NR25-017.aspx (last visited Nov. 17, 2025).

54. Defendant informed Plaintiffs about the recall on November 11, 2025 via a text alert, which included a hyperlink to Defendant's website where consumers could view Defendants' press releases and public statements concerning the outbreak.

55. Defendant affirmatively states across its website that consumers should immediately dispose of all of Defendants' Products, whether or not the Products were opened.

**Key Recall Details**

We have voluntarily recalled all batches of ByHeart Whole Nutrition Infant Formula cans and Anywhere Pack™ nationwide. This action is being taken in close collaboration with the U.S. Food and Drug Administration (FDA).

This action underscores ByHeart's core mission: protecting babies above all else.

**What Consumers Should Do:**
Consumers who have purchased ByHeart Whole Nutrition Infant Formula cans and Anywhere Pack™ should immediately discontinue use and dispose of the product.

**Recall FAQs**

Does this recall, investigation and latest update affect all ByHeart products or only certain batches?

Our nationwide recall includes all batches of ByHeart Whole Nutrition Infant Formula cans and Anywhere Packs™. This action is being taken in close collaboration with the U.S. Food and Drug Administration (FDA), Center for Disease Control (CDC) California Department of Public Health (CDPH) and other critical regulatory bodies.

The investigation remains ongoing. Parents and Caregivers should immediately discontinue use and dispose of all ByHeart formula at this time.

**ByHeart's Misleading and Deceptive Marketing Prior to and Since the Outbreak**

56. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances or bacteria, such as C. botulinum, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

57. The Products' packaging does not identify a risk of C. botulinum. Indeed, C. botulinum is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of C. botulinum in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, C. botulinum.

58. However, the Products at issue have been demonstrated as set forth herein to be at risk of containing *C. botulinum*.

59. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing infant nutritional products for many years, including producing and manufacturing the contaminated Products.

60. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of its Products, the manufacturing process of the ingredients and raw materials its Products contain, and the risks associated with those processes, such as the risk of C. botulinum contamination, as well as the ability to test its Products for C. botulinum contamination prior to releasing its Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

61. Notably, as demonstrated by a warning letter Defendant received from the FDA in August 2023, the corporation has been cited for violating federal manufacturing and processing requirements before. *See* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/byheart-inc-653854-08302023 (last visited Nov. 17, 2025).

62. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiffs and Class members.

63. Defendant has a duty to provide consumers, like Plaintiffs and Class members, with accurate information about the contents and safety of the Products.

64. Even in the midst of its own recall, Defendant misleadingly advises consumers that "no unopened ByHeart product has tested positive for Clostridium botulinum spores or toxin," despite knowing that preliminary laboratory results indicated the presence of *C. botulinum* in an

opened can of ByHeart infant formula and that further testing is underway. *See* https://byheart.com/pages/byheart-broadens-voluntary-recall-while-investigation-continues (last visited Nov. 20, 2025) (emphasis added). Defendant knows that reasonable consumers are unlikely to appreciate this nuance.

65. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products and C. botulinum is likely to continue to deceive and mislead reasonable consumers and the public, as it has already deceived and misled Plaintiffs and Class members.

66. Defendant's misrepresentations and omissions were intentional and material because people are concerned with what is in the products that they or their infant children orally ingest. Consumers such as Plaintiffs and the Class are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients and representations (and omissions) concerning safety. Defendant knows that if it had not omitted that the Products contained a risk of C. botulinum, then Plaintiffs and Class members would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

67. Consumers rely on marketing and information in making purchasing decisions.

68. Defendant is uniquely aware of the influence of product labels and ingredient listings on its consumers. Defendant's core business model includes selling infant formula products at a premium, as compared to similar products, by advertising them as containing clean and organic ingredients that are optimal for the health and nutritional development of infants.

69. Defendant knows that a warning on the labels of the Products throughout the Class Period that the Products include a risk of *C. botulinum* would have been material to consumers since consumers would not have purchased a product that contained a risk of *C. botulinum*.

70. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

71. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as it had already deceived and misled Plaintiffs and Class members.

72. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without a risk of C. botulinum over comparable products not so marketed.

73. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and Class members in that it:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e. Were denied the benefit of the properties of the Products Defendant promised.

74. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class would not have been willing to pay the same amount for the Products they purchased and/or Plaintiffs and Class members would not have been willing to purchase the Products.

75. Plaintiffs and Class members paid for Products that were safe and did not need to be thrown away because of the risk of C. botulinum. Since the Products, by Defendant's own instruction, had to be thrown away because of the risk of C. botulinum, the Products Plaintiffs and Class members received were worth far less than the Products for which they paid. Indeed, they were worthless.

76. Consequently, Plaintiffs and the Class all suffered injury in fact and lost money as a direct result of Defendant's wrongful conduct in that they purchased unsafe and unfit Products that could not be fed to an infant.

77. Plaintiffs and the Class saw the Products' packaging prior to purchasing the Products. Had Plaintiffs and the Class known the truth about the Products as set forth above, they would not have been willing to purchase them at any price.

## CLASS ALLEGATIONS

78. Plaintiffs bring this matter individually and on behalf of the Class defined below. The Class is defined as:

> **All persons in the United States who purchased the recalled Products (the "Nationwide Class")**.

79. Plaintiffs also seek certification of a subclass defined as:

> **All residents of Pennsylvania who purchased the recalled Products (the "Pennsylvania Subclass").**

80. The Nationwide Class and Pennsylvania Subclass are referred to collectively throughout the Complaint as the Class. Excluded from the Class are: (a) any judge presiding over this action and members of their families; (b) Defendant and its subsidiaries, parents, successors, predecessors, distributors, resellers, retailers, and the employees of all of these entities; and (c) individuals who allege personal bodily injury resulting from the use of the Products.

81. Plaintiffs reserve the right to amend the class definition based on facts learned through further investigation and/or discovery.

82. The Class is properly brought and should be certified as a class action under Rule 23(a) and (b)(3) because it satisfies all required elements of Rule 23.

83. Numerosity: The Class is so numerous that joinder of all members is impracticable. There are thousands of Class members.

84. Commonality: There are questions of law and fact common to the Class including, without limitation:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all Class members;

b. Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its recalled Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its recalled Products;

d. Whether Defendant's false and misleading statements and omissions concerning its recalled Products were likely to deceive the public; and

e. Whether Plaintiffs and the Class are entitled to money damages as a result of Defendant's conduct as alleged herein.

85. Typicality: Plaintiffs are members of the Class they seek to represent and their claims are typical of the claims of each Class member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's recalled Products.

86. Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

87. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices, as well as Defendants' recall and conduct in telling Class members not to use their unsafe and unfit recalled Products, thus rendering them worthless.

88. Superiority: A class action is superior to all available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system with respect to the resolution of the issues set forth in this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court. This action presents no unusual management difficulties and this class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of the Class claims.

89. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION

**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §§ 201-1–201-9.2**
**(On Behalf of Plaintiffs and the Pennsylvania Subclass)**

90. Plaintiffs reallege each allegation above as if fully set forth herein.

91. Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." 73 P.S. § 201-3.

92. "Unfair or deceptive acts or practices" as defined in the UTPCPL, include but are not limited to: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have"; "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"; and "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

93. The conduct of Defendant alleged herein constitutes recurring, unfair, or deceptive acts and practices in violation of the UTPCPL, and as such, Plaintiffs and other Class members seek monetary damages against Defendant.

94. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

95. Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have or had the risk of having *C. botulinum*—is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class to purchase Defendant's recalled Products.

Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

96. Plaintiffs and the Class have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless by Defendant's own recall and admission. Accordingly, Plaintiffs and Class members received less than what they bargained and paid for.

97. Defendant's advertising, packaging, and labeling induced Plaintiffs and other Class members to buy Defendant's Products.

98. Defendant's conduct constitutes unfair and deceptive acts and practices in the conduct of business in violation of the UTPCPL, and Plaintiffs and other Class members have been damaged thereby, including by both affirmative misrepresentations and material omissions.

99. As a result of Defendant's recurring, unfair and deceptive acts and practices, Plaintiffs and the Class members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

100. Plaintiffs reallege each allegation above as if fully set forth herein.

101. The conduct of Defendant in manufacturing, distributing, and selling the recalled Products constituted negligence in failing to reasonably act in accordance with all applicable standards of care. Defendant owed Plaintiffs and the Class a duty not to disseminate a materially defective product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the recalled Products that were unsafe and unfit for consumption by infants.

102. Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiffs and the Class of the issues with the recalled Products as alleged above, even after Defendant was, or should have been, fully aware of the problems with the Products.

103. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members suffered direct economic injuries, entitling them to just compensation, as detailed herein.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

104. Plaintiffs reallege each allegation above as if fully set forth herein.

105. Defendant was unjustly enriched at the expense of Plaintiffs and the Class in the form of monies that Plaintiffs and other Class members paid for the recalled Products.

106. Defendants' conduct violated, inter alia, state and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the recalled Products while misrepresenting and omitting material facts, including by making the misrepresentations and omissions alleged herein.

107. Defendant's unlawful conduct allowed Defendant to knowingly realize substantial revenues from selling the recalled Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

108. Plaintiffs and Class members conferred significant financial benefits and paid substantial compensation to Defendant directly and via retailers for the Products, which were not as Defendant represented them to be.

109. Defendant knowingly received and enjoyed the benefits conferred by Plaintiffs and Class members.

110. It is inequitable for Defendant to retain the benefits conferred by Plaintiffs and Class members' overpayments.

111. Plaintiffs and Class members seek restitution and disgorgement of such inequitably obtained monies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Certifying this action as a class action and appointing Plaintiffs as the representatives of the Class defined above pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) Declaring that Defendant is financially responsible for notifying Class members of the pendency of this suit;

(c) Awarding actual, general, statutory, special, incidental, punitive, and/or consequential damages;

(d) Awarding monetary damages and treble damages, pursuant to 73 P.S. § 201-9.2(a);

(e) Awarding statutory damages of $100 per transaction, pursuant to 73 P.S. § 201-9.2(a);

(f) Awarding pre-judgment and post-judgment interest on such monetary relief;

(g) Awarding Plaintiffs and Class members attorneys' fees and costs; and

(h) Granting such other and further relief, including injunctive and/or declaratory relief, as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury of all claims and issues so triable.

Dated: November 20, 2025

Respectfully submitted,

*/s/ Shanon J. Carson*

Shanon J. Carson (PA Bar No. 85957)
Jacob M. Polakoff (PA Bar No. 204124)*
Justin D. Cole (PA Bar No. 334503)*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
scarson@bergermontague.com
jpolakoff@bergermontague.com
jcole@bergermontague.com

Ariana B. Kiener*
Jordan C. Hughes*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (763) 340-0285
akiener@bergermontague.com
jhughes@bergermontague.com

*Motions for admission *pro hac vice* forthcoming

*Counsel for Plaintiffs and the Proposed Class*